1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TIMOTHY C. CLARK,

              Plaintiff,

    v.

MICHAEL J. ASTRUE[1], Commissioner of
Social Security,

              Defendant.

CASE NO.    C06-5208RJB-KLS

REPORT AND
RECOMMENDATION

Noted for March 16, 2007

Plaintiff, Timothy C. Clark, has brought this matter for judicial review of the denial of his application for supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Robert J. Bryan's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is fifty-one years old.[2] Tr. 26.  He has a high school education and past work

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue, who recently became acting Commissioner of Social Security, hereby automatically is substituted for Joanne B. Barnhart.

[2]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

experience as a forklift mechanic and rug cleaner. Tr. 17, 72, 77.

On May 8, 2002, plaintiff filed an application for SSI benefits, alleging disability as of May 1, 1995, due to degenerative disc disease, arthritis in his back, high blood pressure, bronchitis, and cataracts. Tr. 17-18, 63, 71. His application was denied initially and on reconsideration. Tr. 17, 26-28, 36. A hearing was held before an administrative law judge ("ALJ") on December 13, 2004, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 339-72. Also at the hearing, plaintiff amended his alleged onset date of disability to May 8, 2002. Tr. 343-45.

On May 26, 2005, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the disability evaluation process,[3] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of multilevel lumbar degenerative disc disease, asthma, basal cell carcinoma lesions, status post excisions, left foot crush injury, status post surgeries, and hypertension;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform a significant, but not full, range of sedentary work, which precluded him from performing his past relevant work; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 23-25. Plaintiff's request for review was denied by the Appeals Council on April 3, 2006, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R.§ 416.1481.

On April 14, 2006, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3). Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, for the following reasons:

(a) the ALJ erred in finding that plaintiff's impairments did not meet or equal the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(b) the ALJ erred in assessing plaintiff's credibility;

(c) the ALJ erred in assessing plaintiff's residual functional capacity; and

---

[3]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

1
2

      (d)     the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set

3

forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded

4

to the Commissioner for further administrative proceedings.

5

## DISCUSSION

6

      This Court must uphold the Commissioner's determination that plaintiff is not disabled if the

7

Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to

8

support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is

9

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson

10

v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than

11

a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

12

1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than

13

one rational interpretation, the Court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d

14

577, 579 (9th Cir. 1984).

15

I.    The ALJ's Step Three Analysis

16

      At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's

17

impairments to see if they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P,

18

Appendix 1 (the "Listings"). 20 C.F.R. § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

19

If any of the claimant's impairments meet or equal a listed impairment, he or she is deemed disabled. Id.

20

The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the

21

Listings. Tacket, 180 F.3d at 1098.

22

      A mental or physical impairment "must result from anatomical, physiological, or psychological

23

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20

24

C.F.R.§ 416.908.  It must be established by medical evidence "consisting of signs, symptoms, and

25

laboratory findings." Id.  An impairment meets a listed impairment "only when it manifests the specific

26

findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

27

An impairment equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs,

28

and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed

impairment." Id. at *2.  However, "symptoms alone" will not justify a finding of equivalence. Id.

The ALJ in this case made the following step three findings:

> The medical evidence indicates that the claimant has multilevel lumbar degenerative disc disease, asthma, basal cell carcinoma lesions, status post excision, a left foot crush injury, status post surgeries, and hypertension, impairments that are "severe" within the meaning of the [Social Security] Regulations but not "severe" enough to meet or medically equal, either singly or in combination any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

Tr. 20.  Plaintiff argues the ALJ erred in finding he had severe impairments, but then simply determining that none of those impairments met or equaled listing level severity, without offering any specific support for this determination.  The undersigned disagrees.

As noted above, plaintiff has the burden of proof at step three of the sequential disability evaluation process.  Here, though, plaintiff merely makes a general assertion that the ALJ erred by failing to provide greater support for his determination.  He has come forth with no evidence of his own to show that any of his impairments met or equaled the criteria of any of those contained in the Listing.  Indeed, plaintiff does not even set forth which particular Listings he believes are applicable to this matter.  General assertions of this nature are wholly insufficient to meet plaintiff's burden of proof on this issue.

In addition, the ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings).  This is particularly true where, as here, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).  As such, no error on the part of the ALJ was committed.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long

1    as that determination is supported by substantial evidence. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th

2    Cir. 2001).

3        To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the

4    disbelief." <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify

5    what testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u>; <u>Dodrill v.</u>

6    <u>Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering,

7    the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." <u>Lester</u>, 81 F.2d at

8    834.  The evidence as a whole must support a finding of malingering. <u>O'Donnell v. Barnhart</u>, 318 F.3d 811,

9    818 (8th Cir. 2003).

10       In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

11   evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

12   testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ

13   also may consider a claimant's work record and observations of physicians and other third parties regarding

14   the nature, onset, duration, and frequency of symptoms. <u>Id.</u>

15       Plaintiff takes issue with the ALJ's finding that the allegations regarding his limitations were "not

16   totally credible." Tr. 20-21, 24.  For example, the ALJ discounted plaintiff's credibility in part because he

17   "elected to pursue conservative treatment" rather than have back surgery as medically recommended by one

18   of the physicians in the record who examined him. Tr. 21, 187.  Plaintiff argues that because he already had

19   received more than five surgeries on his left foot, which did not completely resolve his problems, this was an

20   acceptable reason for not electing to have back surgery.  The undersigned disagrees.

21       Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a

22   finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain

23   testimony." <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989).  That plaintiff may not have had completely

24   successful prior surgical procedures performed on his left foot does not necessarily mean that surgery done

25   on his back would be unsuccessful. <u>See</u> 20 C.F.R. § 416.930(c)(3) (stating claimant may decline to follow

26   prescribed surgery that was previously performed with unsuccessful results and <u>same</u> surgery is again being

27   recommended for <u>same</u> impairment) (emphasis added).

28       Further, plaintiff points to nothing in the record to show that this was the reason why he choose not

to go ahead with the back surgery.  In addition, plaintiff himself reported in early November 2001, that his

left foot was "now stable." Tr. 171.  Indeed, as noted by one of his physicians, it appears plaintiff chose not

to pursue the recommended surgery due to adequate relief he got from conservative treatment:

> I think that a decompressive laminectomy from L2 to S1 would offer him a reasonable
> chance of significant symptomatic improvement.  Risks, benefits, and alternatives to
> proceeding with surgery were explained to him in detail. . . .
>
> At this time, he seems to be functioning relatively well on a day in and day out basis.  He
> does report that with trigger point injections . . . he is able to continue functioning.  I
> have told him that as long as he is willing to continue with conservative care he should
> do so and that he should contact our office when and if he chooses to proceed with
> surgery.  The surgery was explained to him again.  All questions were answered.  He is
> happy with this plan.

Tr. 187; Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered claimant's failure

to request serious medical treatment for supposedly excruciating pain); see also Johnson v. Shalala, 60 F.3d

1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to

be suggestive of lower level of pain and functional limitation).

The ALJ further discounted plaintiff's credibility in part because less than three months after he

reported being able to walk for only three to five minutes at a time, treatment records showed "he could

walk about three miles." Tr. 21, 157.  Plaintiff argues this was not a valid reason for finding him to be not

credible, as he was able to walk that distance only after having received a trigger point injection that lasted

approximately two weeks before rapidly declining in the relief it provided, and he testified at the hearing

that he could not go for walks anymore.

First, as noted above, a claimant's prior inconsistent statements concerning his or her symptoms can

constitute a valid basis for discounting his or her credibility. Smolen, 80 F.3d at 1284.  Thus, the fact that

plaintiff may have testified differently regarding his ability to walk at the hearing, does not mean the ALJ is

required to believe that testimony.  Further, as discussed above, while the relief plaintiff has received from

each trigger point injection may have been temporary, by plaintiff's own report those injections provided

him with significant enough benefit to allow him to forego more aggressive surgical treatment, as well as to

function "relatively well." Tr. 187; see also Tr. 156-58, 160-61, 188, 201, 236-37, 323.

Plaintiff next argues the ALJ erred in discounting his credibility on the basis that he was "able to

complete normal activities of daily living, such as preparing meals and doing his own grocery shopping." Tr.

21.  To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her

daily activities. <u>Smolen</u>, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." <u>Id.</u> at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." <u>Id.</u>

Here, the evidence in the record does not support the ALJ's findings regarding plaintiff's ability to perform his activities of daily living at a level commensurate with transferability to a work environment. For example, while plaintiff did report going grocery shopping, he stated that he did so only one time per month. Tr. 86. In addition, the record indicates that plaintiff may be much more limited in his ability to perform household chores than found by the ALJ. Plaintiff reported that he did not clean his own living area, did no yard work, and had difficulty finishing his chores, including being able to perform them for only three to five minutes at a time. Tr. 86-87. As such, this reason for discounting plaintiff's credibility was not clear and convincing.

The record also supports plaintiff's argument that the ALJ provided inadequate reasons for finding plaintiff's allegation of having cataracts that seriously impaired his vision to be less than fully credible. Tr. 21. The reason the ALJ gave for making this finding was plaintiff testified that his daily routine included reading and watching television. <u>Id.</u> It is true that plaintiff testified that he watched "a lot of sports" on television. Tr. 357. However, plaintiff explained that he had "a big tv." <u>Id.</u> He further explained that he no longer read anymore, including the newspaper, except the sports pages at times when he can "make it out." Tr. 353, 357. Accordingly, the undersigned also finds this to be less than a clear and convincing reason for rejecting plaintiff's allegations regarding his impaired vision.

On the other hand, the ALJ provided other, valid reasons for discounting plaintiff's credibility that plaintiff has not challenged. For example, the ALJ noted that the majority of plaintiff's impairments had been present for twenty to thirty years prior to his alleged onset date of disability, during which he "was able to work in physically demanding jobs." Tr. 20; <u>Smolen</u>, 80 F.3d at 1284 (ALJ may consider claimant's work record in making credibility determination). In addition to the trigger point injections, the ALJ also observed that other conservative treatment measures were effective in helping to relieve plaintiff's back pain. Tr. 20-21; <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998) (claimant's credibility may be discounted on basis of medical improvement).

REPORT AND RECOMMENDATION
Page - 7

1    Accordingly, the undersigned finds overall the ALJ's determination that plaintiff was not totally

2    credible to be supported by substantial evidence. See Tonapetyan, 242 F.3d at 1148 (fact that some asserted

3    reasons for discounting claimant's credibility are improper does not render ALJ's credibility determination

4    invalid, as long as it is supported by substantial evidence in record).

5    III.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

6    If a disability determination "cannot be made on the basis of medical factors alone at step three of

7    the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and

8    assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A

9    claimant's residual functional capacity assessment is used at step four to determine whether he or she can do

10   his or her past relevant work, and at step five to determine whether he or she can do other work. Id.  It thus

11   is what the claimant "can still do despite his or her limitations." Id.

12   A claimant's residual functional capacity is the maximum amount of work the claimant is able to

13   perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work

14   must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those

15   limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a

16   claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-

17   related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

18   medical or other evidence." Id. at *7.

19   Here, the ALJ assessed plaintiff with the following residual functional capacity:

20       [T]he claimant retains the residual functional capacity for sedentary work due to his
         limitations in standing and walking.  He is able to lift 10 pounds frequently, 20 pounds
21       occasionally, and can stand or walk for two hours and sit for six hours during an eight
         hour work day. The claimant is able to do a job that does not involve more than
22       occasional balancing, stooping, kneeling, crouching, or crawling, does not involve more
         than occasional climbing of ramps or stairs, and does not involve any climbing of
23       ladders, ropes, or scaffolds, in an environment in which he does not receive concentrated
         exposure to vibration, fumes, odors, dusts, gases, poor ventilation, or hazards such as
24       machinery or heights.

25   Tr. 22.  Plaintiff first argues the ALJ erred in making the above assessment by not putting forth any effort to

26   explore his inability to perform work-related activities on a sustained basis eight hours a day, five days a

27   week.  Plaintiff, however, has not pointed to any medical evidence in the record, nor is the undersigned able

28   to find any, that he is limited in his ability to work a full workday and workweek.  As discussed above, such

1    a broad, general assertion is wholly insufficient to raise a valid issue for judicial review.

2         Plaintiff next argues the ALJ erred by neglecting to address the "non-exertional" limitations he was

3    identified as having.  Again, as with plaintiff's argument regarding sustained performance of work-related

4    activities, no effort has been made to point to specific non-exertional limitations the ALJ allegedly failed to

5    properly address.  Likewise, plaintiff's assertion that the ALJ failed to comply with his duty to fairly and

6    fully develop the record, and consider all relevant evidence therein, equally lacks the requisite specificity to

7    allow for proper judicial review of the ALJ's decision.  In addition, plaintiff has failed to show the record

8    was inadequate, or the evidence contained therein sufficiently ambiguous, so as to trigger a duty to further

9    develop the record. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).

10        Plaintiff also argues the ALJ's behavior at the hearing showed he had already decided this matter, by

11   going through a very brief and virtually non-descript questioning session, and chose to not obtain any

12   additional information relevant to the issues involved.  A thorough review of the transcript of the hearing,

13   however, fails to support plaintiff's argument.  In addition, there is no indication in the record that the ALJ

14   already had prejudged this matter or was otherwise biased toward plaintiff. Schweiker v. McClure, 456 U.S.

15   188, 195 (1982) (social security hearing officers are presumed to be unbiased); Rollins v. Massanari, 246

16   F.3d 853, 858 (9th Cir. 2001) (ALJ's behavior, in context of whole case, must be so extreme as to display

17   clear inability to render fair judgment); Bunnell v. Barnhart, 336 F.3d 1112, 1115 (9th Cir. 2003) (actual bias

18   rather than mere appearance of impropriety must be shown).

19        On the other hand, plaintiff does validly challenge the ALJ's analysis of the evidence in the record

20   concerning plaintiff's allegation that he has impaired vision due to cataracts.  The ALJ implies, but does not

21   expressly find, that plaintiff's alleged vision impairment was a treatable condition, and therefore not severe

22   and not disabling. See Tr. 19-20.  The ALJ thus did not consider whether any limitations stemming from

23   that impairment should have been included in plaintiff's residual functional capacity assessment. See Tr. 22.

24   For the reasons set forth below, this was error.

25        It is true, as the ALJ noted, that while plaintiff was diagnosed with a decrease in visual acuity due to

26   cataracts in late May 2002, it was found that he had "potential acuity of 20/20 [in] each eye if surgery was

27   performed." Tr. 144.  Further, the physician who examined his eyes and made the above finding at that time

28   opined as follows:

REPORT AND RECOMMENDATION
Page - 9

> This patient cannot be considered disabled because he has a treatable condition. If the surgery was performed, distance acuity would be excellent and only reading glasses [would be] required.

Id. Another examining physician in the record also concluded that if plaintiff found his visual status to be limiting for employment purposes, than cataract surgery was "the preferred treatment." Tr. 146.

Plaintiff argues he had an acceptable reason for not pursuing cataract surgery, despite his allegation that he was significantly visual impaired and the above medical opinions that such surgery would make his condition treatable and therefore not disabling. At the hearing, plaintiff provided the following response to the question as to why he chose not to pursue surgery:

> Because I went to Pacific Cataract and Laser Institute to get them taken out. And they forewarn you that if you have high blood pressure or respiratory problems, you could die during the surgery because it's a needle behind the eye and all that. But they said, the key word is, they said respiratory problems or high blood pressure. And I have both. So, I didn't want to take that risks [sic] right now.

Tr. 353. The Commissioner's own regulations recognize this as a valid reason for not following prescribed or recommended medical treatment.

The Commissioner is required to consider a claimant's physical condition in determining whether a claimant has an acceptable reason for failing to follow prescribed treatment. 20 C.F.R. § 416.930(c). Thus, per the Commissioner's own published example, a claimant may decline to follow recommended treatment "because of its enormity (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason [that it] is very risky for you." 20 C.F.R. § 416.930(c)(4) (emphasis added); see also SSR 96-7p, 1996 WL 374186 *7 (ALJ must not draw any inferences about claimant's symptoms and their functional effects from his or her failure to follow prescribed treatment, without first considering any explanations claimant may provide or other information in record which may explain that failure). Certainly, the possibility plaintiff's prescribed treatment could result in death constitutes a very significant health risk.

Here, the medical evidence in the record shows plaintiff may have been justified in deciding not to take that risk, as it appears he had a history of inadequately controlled hypertension. Tr. 122, 124, 126, 128, 134, 137, 146. The record also shows that absent the recommended cataract surgery, plaintiff would have significant work-related limitations stemming from his visual impairment. For example, one examining physician opined that without the surgery plaintiff had "adequate vision to do most occasional chores" in non-glare situations, but it might "be significantly reduced" with glare. Tr. 146. Another, non-examining

1    consulting, physician found him to be limited in terms of "[a]ccomodation," presumably because of his

2    cataracts. Tr. 183, 185.  Given that the ALJ failed to properly consider whether plaintiff's asserted reason

3    for not having cataract surgery was valid, it is not clear the ALJ's failure to consider the above limitations in

4    assessing plaintiff's residual functional capacity was justified.

5    IV.    <u>The ALJ's Step Five Analysis</u>

6           If the claimant cannot perform his or her past relevant work at step four of the disability evaluation

7    process, at step five, the ALJ must show there are a significant number of jobs in the national economy the

8    claimant is able to do. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(d)-

9    (e).  There are two ways that the ALJ can to this: "(a) by the testimony of a vocational expert, *or* (b) by

10   reference to the [Commissioner's] Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2"

11   (the "Grids"). <u>Tackett</u>, 180 F.3d at 1100-1101 (emphasis in original); <u>see also</u> <u>Osenbrock v. Apfel</u>, 240 F.3d

12   1157, 1162 (9th Cir. 2001).  The ALJ's ability to rely on the Grids is limited, however, as noted by the Ninth

13   Circuit in describing their purpose and function:

14           In some cases, it is appropriate for the ALJ to rely on the Medical-Vocational Guidelines
             to determine whether a claimant can perform some work that exists in "significant
15           numbers" in the national economy.  The Medical-Vocational Guidelines are a matrix
             system for handling claims that involve substantially uniform levels of impairment. . . .
16
             The Guidelines present, in *table form*, a short-hand method for determining the
17           availability and numbers of suitable jobs for a claimant.  These tables are commonly
             known as "the grids."  The grids categorize jobs by their physical-exertional
18           requirements and consist of three separate tables-one for each category: "[m]aximum
             sustained work capacity limited to sedentary work," "[m]aximum sustained work
19           capacity limited to light work," and "[m]aximum sustained work capacity limited to
             medium work."[4] . . . Each grid presents various combinations of factors relevant to a
20           claimant's ability to find work.  The factors in the grids are the claimant's age, education,
             and work experience.  For each combination of these factors, . . . the grids direct a
21           finding of either "disabled" or "not disabled" based on the number of jobs in the national
             economy in that category of physical-exertional requirements.
22
             This approach allows the Commissioner to streamline the administrative process and
23           encourages uniform treatment of claims. . . .

24           The Commissioner's need for efficiency justifies use of the grids at step five where they
             *completely and accurately* represent a claimant's limitations. . . . In other words, a
25           claimant must be able to perform the full range of jobs in a given category, i.e.,
             sedentary work, light work, or medium work.
26
     <u>Tackett</u>, 180 F.3d at 1101 (emphasis in original) (internal citations and footnote omitted).
27

28           ⁴However, "[I]f a claimant is found able to work the full range of heavy work this is 'generally sufficient for a finding
     of not disabled.'" <u>Tackett</u>, 180 F.3d at 1101 n.5 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 204.00).

1    If, on the other hand, a claimant has "significant non-exertional impairments," those impairments

2    "may make reliance on the grids inappropriate."[5] Id. at 1101-02; see also Osenbrock, 240 F.3d at 1162

3    (ALJ cannot rely on Grids where claimant has significant non-exertional impairments); Moore v. Apfel, 216

4    F.3d 864, 869 (9th Cir. 2000) (Grids inapplicable when they do not completely describe claimant's abilities

5    and limitations).  Proper use of the Grids depends in each case upon the nature and extent of the claimant's

6    impairments and limitations:

> The ALJ must apply the grids if a claimant suffers only from an exertional impairment . . . In such cases, the rule is simple: the grids provide the answer.  Where the grids dictate a finding of disability, the claimant is eligible for benefits; where the grids indicate that the claimant is not disabled, benefits may not be awarded.  However, where a claimant suffers solely from a nonexertional impairment . . . the grids do not resolve the disability question . . . other testimony is required.  In cases where the claimant suffers from both exertional and nonexertional impairments, the situation is more complicated.  First, the grids must be consulted to determine whether a finding of disability can be based on the exertional impairments alone. . . . If so, then benefits must be awarded.  However, if the exertional impairments alone are insufficient to direct a conclusion of disability, then further evidence and analysis are required.  In such cases, the ALJ must use the grids as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." . . . In short, the grids serve as a ceiling and the ALJ must examine independently the additional adverse consequences resulting from the nonexertionary impairment.

Cooper v. Sullivan, 880 F.2d 1152, 1155-56 (9th Cir. 1989) (internal citations and footnotes omitted)

(emphasis added).

   The ALJ stated his determination to find plaintiff not disabled at step five of the sequential disability

evaluation process was reached within the framework of Grid Rule 201.28. Tr. 23.  Plaintiff argues that

because the ALJ also found his "ability to perform all or substantially all of the requirements of sedentary

work" was "impeded by additional exertional and/or non-exertional limitations" (Tr. 23), logic implies he

could perform only an insubstantial amount of such requirements, and therefore the Grids are inapplicable.

Plaintiff's reasoning is fatally flawed and unsupported by the law in this area.

   As noted above, in the Ninth Circuit the Grids indeed are used as a "framework" in those situations

where a claimant has both exertional and non-exertional limitations, as plaintiff does in this case.  As such,

the ALJ did not err in using them as such here.  Further, the ALJ clearly found that plaintiff was capable of

---

[5]"Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b).  "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

1  performing a significant, but not full range of sedentary work. Tr. 23-24.  While it is true the ALJ made the

2  statement set forth in the previous paragraph, that statement was made solely in the context of showing that

3  a disability determination could not be made on the Grids alone, and that additional evidence, such as the

4  testimony of a vocational expert, was needed. Tr. 23.

5       Plaintiff also argues the ALJ erred in using Grid Rule 201.28 itself as a framework for finding him

6  not disabled.  That rule, plaintiff asserts, was inapplicable to him, because he did not fall within the proper

7  age range for its application at the time of the ALJ's decision.  It is true that Grid Rule 201.28 applies only

8  to younger individuals age eighteen to forty-four, and that plaintiff was forty-nine years old at the time of

9  the ALJ's decision.  Accordingly, the undersigned finds the ALJ erred in applying this rule.  Such error,

10 however, was harmless.  See Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190,

11 1197 (9th Cir. 2004) (applying harmless error standard); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir.

12 1990) (holding ALJ committed harmless error).  While the ALJ may have applied the incorrect Grid Rule

13 due to plaintiff's age category, plaintiff still would have been found disabled had the ALJ applied the correct

14 rule. See 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.21.

15      Plaintiff next argues he should have been found disabled based on the testimony of the vocational

16 expert.  An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical

17 posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d

18 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony also must be reliable in light of the medical

19 evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  As such,

20 the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical

21 record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit those limitations he or

22 she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

23      Plaintiff asserts the vocational expert's testimony shows he is unable to sustain employment.  The

24 vocational expert did testify that if an individual had difficulty maintaining the minimum of one break in the

25 morning and another break in the afternoon, and would require more than that, he or she would not be able

26 to remain employed. Tr. 369.  However, plaintiff points to no medical or other reliable evidence in the

27 record, nor does the undersigned find any, that he suffers from such a limitation.  Accordingly, the ALJ

28 properly did not include that limitation in his assessment of plaintiff's residual functional capacity or in the

1    hypothetical question he posed to the vocational expert.

2    V.    <u>Additional Evidence Submitted to This Court</u>

3    Plaintiff has attached to his opening brief exhibits containing additional documentation, which he

4    asserts represent evidence of continuing treatment and evaluations emphatically suggesting the decision of

5    the ALJ in this matter was based on an inaccurate assessment of his impairments and limitations stemming

6    therefrom.  Much of that evidence, however, is medical evidence that already is contained in the record.  <u>See</u>

7    Tr. 215-16, 332-36.  Further, while some of it does post-date the ALJ's decision, none of that evidence

8    establishes error on the part of the ALJ.  The Appeals Council obviously agreed as well, as it declined to

9    grant plaintiff's request for review despite such evidence.

10    Plaintiff also has submitted a copy of an emergency services reported, dated August 23, 2005, and a

11    copy of a letter from plaintiff's treating physician, Dr. Steven Litsky, dated September 5, 2006.  Neither of

12    these documents is contained in the record, and thus were not before the ALJ or the Appeals Council when

13    they issued their decision.  To determine whether reversal and remand are appropriate in light of additional

14    evidence submitted for the first time to federal court, the standard set forth in 42 U.S.C. § 405(g) applies.

15    <u>Mayes v. Massanari</u>, 276 F.3d 453, 461-62 (9th Cir. 2001).  That standard requires that the claimant show

16    the additional evidence is both "new" and "material" to determining disability, and that he or she "had good

17    cause for having failed to produce that evidence earlier." <u>Id.</u> at 462.

18    To be material under 42 U.S.C. § 405(g), "the new evidence must bear 'directly and substantially on

19    the matter in dispute.'" <u>Id.</u> (citation omitted).  In addition, the claimant must demonstrate a "reasonable

20    possibility" that the new evidence "would have changed the outcome of the administrative hearing." <u>Id.</u>

21    (citation omitted).  To demonstrate "good cause," the claimant must show that the new evidence "was

22    unavailable earlier." <u>Id.</u> at 463.  The good cause requirement will not be met by "merely obtaining a more

23    favorable report once his or her claim has been denied." <u>Id.</u>

24    Here, plaintiff has failed to demonstrate the standard set forth in 42 U.S.C. § 405(g) has been met

25    with respect to either additional document he has submitted.  For example, plaintiff has not stated why he

26    did not provide the Appeals Council with a copy of the August 23, 2005 emergency services report, even

27    though that report appears to have been available for some seven months prior to the decision denying her

28    request for review was issued.  Further, nothing in that report demonstrates a reasonable possibility that it

1   would have changed the outcome of the hearing.  Indeed, at most that document shows plaintiff suffered

2   from decreased range and back pain, the latter of which shortly improved on medication.

3         The September 5, 2006 letter from Dr. Litsky does post-date the decision denying plaintiff's request

4   for review by the Appeals Council.  However, as noted above, the good cause requirement will not be met

5   by "merely obtaining a more favorable report once his or her claim has been denied." Mayes, 276 F.3d at

6   463.  Here, in the letter, which is addressed to "Social Security Disability," Dr. Litsky expressly stated that

7   he was submitting it in support of plaintiff's disability claim.  Dr. Litsky opines that while plaintiff had

8   "managed to stay functional" on conservative treatment, that functional level was "not enough to pursue an

9   occupation."  Plaintiff provides no reason why he could not have procured this opinion earlier, particularly

10  as it appears to have been based on Dr. Litsky's prior examinations of plaintiff, none of which gave any

11  indication Dr. Litsky felt plaintiff to be disabled.

12        Finally, plaintiff points to a letter from the Social Security Administration, dated October 26, 2005,

13  which states he was determined to "have been medically allowed to receive SSI benefits," and indicates a

14  benefits receipt commencement date of June 30, 2005.  It does appear plaintiff was found to be disabled by

15  the Commissioner as of August 2005. See Tr. 6.  Again, however, documentation of this determination,

16  including the actual decision finding plaintiff disabled, is not contained in the record other than a mention of

17  it in the Appeals Council's denial of the request for review, and plaintiff once more has failed to provide any

18  reasons why he did not come forward with such documentation earlier.

19        Plaintiff argues it is unreasonable to assume that a significant difference in his condition occurred

20  between the time the ALJ found him disabled in late May 2005, and just one month later when the Social

21  Security Administration ruled otherwise.  The reason the Social Security Administration found plaintiff to

22  be disabled, however, appears to be because of his age status, and not because of a change in the nature of

23  his alleged impairments and/or limitations. See Tr. 6.  In addition, the subsequent disability determination is

24  not currently before this Court for review.  Plaintiff himself admits that determination was based on a new

25  application for SSI benefits he filed after the ALJ issued his adverse decision.

26        The Court can only review the ALJ's decision based on the record before that ALJ, along with all

27  additional evidence that properly was submitted to the Appeals Council or to federal court.  That evidence,

28  as explained above, does not clearly show plaintiff to be disabled.  If plaintiff believes the onset date of

disability subsequently determined by the Social Security Administration was incorrect, and should have been found to have begun at an earlier date, the proper course for him to take is to pursue the appropriate administrative and/or federal court review processes to challenge that determination.  It is not proper, and the Court will not, do so in the context of this case.  Accordingly, for all of the reasons set forth above, the undersigned declines to give any weight to the additional evidence submitted by plaintiff.

VI.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because, as discussed above, issues still remain with respect to plaintiff's stated reason for not pursuing cataract surgery, the extent and nature of his vision impairment, and the effect, if any, that impairment has on his residual functional capacity and ability to work, this matter should be remanded to the Commissioner for further administrative proceedings.  Indeed, no evidence of plaintiff's vision impairment, or limitations stemming therefrom, was presented to the vocational expert.  As such, the record is incomplete.  Remand of this matter, however, is being made solely for the purpose of further evaluating this issue.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

REPORT AND RECOMMENDATION
Page - 16

1    Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),

2    the parties shall have ten (10) days from service of this Report and Recommendation to file written

3    objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

4    objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit

5    imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **March 16, 2007**,

6    as noted in the caption.

7        DATED this 21st day of February, 2007.

8

9

10                          Karen L. Strombom
                            United States Magistrate Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28